**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

**CHAMBERS OF**
**J. Mark Coulson**
**UNITED STATES MAGISTRATE JUDGE**

**101 WEST LOMBARD STREET**
**BALTIMORE, MARYLAND 21201**
**P:(410) 962-4953 — F:(410) 962-2985**

October 29, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE: *Rachel Z. v. Frank Bisignano, Social Security Administration*
Civil No. 26-cv-00289-JMC

Dear Counsel:

Rachel Zell ("Plaintiff") petitioned this Court on January 23, 2026, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying her claims for disability insurance benefits ("DIB"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 11, 14). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will REMAND the ALJ's determinations for the reasons explained below.

## I. Procedural Background

Plaintiff filed her current Title II application for DIB on August 29, 2023, alleging disability as of February 10, 2023. (Tr. 17).[1] The SSA initially denied the application on January 25, 2024. *Id.* Defendant affirmed its determination upon reconsideration on May 10, 2024. *Id.* Thereafter, on May 23, 2024, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). *Id.* A telephonic hearing took place on November 20, 2024 and a supplemental hearing took place on June 3, 2025. *Id.* at 123-24. Concluding that Plaintiff was not under disability beginning February 10, 2023, ALJ Scott Massengill denied Plaintiff's claims on June 18, 2025. *Id.* at 36-37. Plaintiff appealed, and the decision became final when the Appeals Council concluded there was no basis upon which to grant Plaintiff's request for review. *Id.* at 1-5.

## II. The ALJ's Decision

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 8) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

In arriving at the decision to deny Plaintiff's claims, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since February 10, 2023, the alleged onset date." (Tr. 19). At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "attention deficit hyperactivity disorder (ADHD), bipolar disorder, posttraumatic stress disorder (PTSD), other depressive disorder or adjustment disorder with depressed mood, *fibromyalgia*, disorders of the skeletal spine (cervical and thoracic), Raynaud's disease, and obesity." *Id.* at 20 (emphasis added).

At step three, the ALJ determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.* at 22; 20 CFR §§ 404(p), Appendix I (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.925, 416.926). In assessing Plaintiff's step-three impairments, with regard to fibromyalgia, the ALJ reasoned in part:

> Fibromyalgia is not a listed impairment; however, the undersigned has fully considered it and all of the claimant's severe medically determinable impairments under all applicable listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (SSR 12-2p). The record indicates that complaints of pain and other symptoms, attributed in part to fibromyalgia, are long-standing, documented well prior to the alleged onset date and continuing through the most recent medical evidence (see Ex. 1F, 3F, 4F, 5F, 6F, 7F, 8F, 9F, 11F, 12F). However, objective findings of fibromyalgia, such as tender trigger points on examination, are poorly documented and even specialist/rheumatology records do not document significant dysfunction (Ex. 1F, 3F, 5F, 9F). Further, objective physical examination typically reveals preserved range of motion, posture, and ambulatory ability, with no persistent cognitive, bladder, or bowel deficits noted in association with this disorder, despite the claimant's allegations of debilitating and functionally limiting pain (Ex. 1F, 3F, 5F, 6F, 8F, 12F). Her treatment has been routine and conservative, consisting only of medication management and prescription for home exercise, with few changes in treatment during the period at issue, suggestive of a stable and controlled disorder

> rather than listing-level severity (Ex. 1F, 3F, 5F, 9F). Accordingly, based upon a thorough review of the medical records and opinion evidence, as discussed in greater detail below, the undersigned finds that the claimant's fibromyalgia, alone or in combination with her other severe impairments, does not result in sufficient symptoms or objective functional impairment to medically equal a listed impairment (SSR 12-2p).

*Id.* at 22-23. Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T]he undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: occasionally able to climb ramps or stairs but never able to climb ladders, ropes, or scaffolds; occasionally able to balance, stoop, kneel, crouch, or crawl; avoid concentrated exposure to vibration; avoid concentrated exposure to extreme cold; avoid work at unprotected heights or around dangerous moving machinery (i.e. forklifts); limited to frequent use of either upper extremity for fine fingering or grasping/handling of small objects; limited to frequent use of either upper extremity for pushing/pulling or operation of hand controls; able to work at a position requiring no more than occasional use of a keyboard or writing; able to have occasional interaction with co-workers and/or the general public; able to understand and carry out simple instructions and routine, repetitive tasks; able to apply commonsense understanding to carry out detailed, but uninvolved, instructions; avoid work requiring a high-quota production-rate pace (i.e., rapid assembly line work where co-workers are side-by-side and the work of one affects the work of the others); able to perform work activities for up to two hours at a time but would then become distracted, causing the individual to be off task, but time off task can be accommodated with normal breaks; occasionally able to change activities or work settings during the workday without it being disruptive; and occasionally able to deal with changes in a routine work setting.

*Id.* at 27. Plaintiff correctly points out that to reach that decision, the ALJ summarized the medical records and Plaintiff's testimony. *Id.* at 27-34. For example, the ALJ reasoned:

> The claimant alleges disability due to anemia, fatigue, fibromyalgia, rheumatoid arthritis, Raynaud' s disease, migraine with aura, cervical radiculopathy, bilateral carpal tunnel syndrome, history [o]f epigastric pain following gastrectomy in 2020 requiring surgical intervention in 2024, ADHD, bipolar disorder, PTSD, depression, and anxiety; she also reported height and weight indicative Of obesity and treatment for gastroesophageal reflux disease (GERD) (Ex. 3E, I I E, 13E, 20F; Testimonyl, Testimony2). These disorders are reportedly characterized by symptoms [o]f depression, anxiety, panic attacks, distractibility, nerve pain, chest pain, pain in her hands/fingertips, severe headaches ([occurring] two to three times per month and lasting one to three days each), vertigo, daily nausea with intermittent vomiting, blurry vision, dry mouth, intolerance to cold, muscle spasms,

> and chronic, daily fatigue so severe that she cannot stay awake (must nap twice per week), pay attention, or adequately shower, bathe, dress, prepare meals, drive, use public transportation, visit with others, or complete household chores (Ex. 3E, 6E, 7E, 8E, IOE, IIE; Testimonyl, Testimony2). Secondary to these disorders and symptoms, the claimant alleges she has significant difficulty lifting, sitting, standing, walking, squatting, bending, reaching, kneeling, climbing stairs, using her hands, remembering, concentrating, understanding, and handling stress (Ex. 8E, IOE; Testimonyl, Testimony2). The claimant's counsel asserts that the claimant's conditions preclude a full range of sedentary work and that she is unable to perform work generally available in the national economy (Ex. 20E).
>
> After careful consideration [o]f the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects [o]f these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Impairments/symptoms alleged, but already determined to be either not medically determinable or medically determinable but not severe have been discussed in detail under Finding 3, including specific discussion of any less than minimal impact [o]On work related functioning caused by non-severe impairments, and accordingly will not be discussed again in this portion of the decision.
>
> . . .
>
> The claimant's allegations are also not entirely consistent with the objective medical evidence [o]f record. The record documents subjective complaints of chronic pain everywhere, mostly in the claimant's neck, arms, and hands, along with extensive subjective symptomatic complaints, including fatigue, upper extremity sensory changes, headaches, nausea, dysphagia, sweating, heart palpitations, exertional chest pain, blurry vision, lack [o]f urge to urinate or defecate, lack [o]f feeling in her legs, dry mouth, numbness, weakness, and episodes of nocturnal shaking (see Ex. IF, 3F, 4F, 5F, 6F, 7F, 8F, 9F, 1 IF, 120, consistent with the reporting made in connection with the current application for benefits. However, objective etiology for these subjective symptoms is marginal, with the majority of the evidence ruling out or disproving the existence of significant disorders, as discussed in part under Finding 3. Fibromyalgia is noted in the claimant's chronic medical history and, relevant to the period at issue, is diagnosed by both primary care (Ex. IF, 3F, 5F, 9F) and rheumatology (Ex. 5F, pp. 42-43), marginally sufficient to establish this disorder as a medically determinable impairment that could be expected to cause some [o]f the reported symptoms, although objective findings typically used to establish this disorder, such as tender trigger points, are notably not documented.

*Id.* at 28-29. The ALJ further concluded that Plaintiff was unable to perform any past relevant work. *Id.* at 35. Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ

determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) Housekeeper, with approximately 175,000 such positions in the national economy; (2) Cafeteria Attendant, with approximately 26,000 such positions in the national economy; and (3) Ticket Marker, with approximately 165,000 such positions in the national economy. *Id.* at 36. Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from February 10, 2023 to the date of the decision. *Id.*

## III. Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

## IV. Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence. Specifically, Plaintiff faults the ALJ's for erroneously requiring "Plaintiff to substantiate the degree of her subjective complaints, including those caused by fibromyalgia, by objective medical evidence, and determined that she had failed to do so." (ECF No. 11 at 22).[2] For the reasons that follow, the ALJ's RFC determination is not supported by substantial evidence. As such, I will remand the case.

### a. <u>The ALJ Improperly Considered Plaintiff's Fibromyalgia at Step Three</u>

Plaintiff argues the ALJ's opinion warrants remand because, contrary to the Fourth Circuit's rulings in *Arakas v. Comm'r, Soc. Sec. Admin.* and *Hultz v. Bisignano*, the ALJ "erroneously required the Plaintiff to substantiate the degree of her subjective complaints, including those caused by fibromyalgia, by objective medical evidence, and determined that she had failed to do so." (ECF No. 11 at 22). Plaintiff correctly asserts that the ALJ concluded fibromyalgia is a severe impairment; yet, he found at step three that it was not medically equal to a listed impairment. (ECF No. 11 at 2, 20-22); (Tr. 20, 22-23, 28). The Commissioner asserts that although fibromyalgia is mentioned in Plaintiff's medical history, "objective findings . . . such as tender trigger points, are notably absent." (ECF No. 14 at 8). Therefore, the Commissioner claims that "after a comprehensive review of the medical records and opinion evidence, the ALJ properly concluded that Plaintiff's fibromyalgia, whether considered alone or in conjunction with her other

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. Where a document does not have an electronic filing stamp, the Court is referring to the page numbers at the bottom of the document.

severe impairments, did not produce sufficient symptoms or objective functional impairment to medically equate to a listed impairment." (ECF No 14 at 17).

The Fourth Circuit has explained that "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia or some other disease that does not produce such evidence." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020); *Shelley C. v. Comm'r of Soc. Sec. Admin*, 61 F.4th 341, 361-62 (4th Cir. 2023). *Arakas* and *Shelley C.* do not, however, "suggest than an ALJ should ignore objective evidence and fully credit subjective statements." *Hardin v. Dudek*, No. 7:24-cv-377-KS, 2025 WL 602951 at *5 (E.D.N.C. Feb. 25, 2025). Instead, ALJs must not "require[e] claimants to provide medical evidence that would be impossible to produce given their specific medical conditions." *Clifford v. O'Malley*, No. 1:23-cv-704-LPA, 2024 WL 3105669, at *10 (M.D.N.C. June 24, 2024). Moreover, "a claimant's allegations about [his] pain" "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can be reasonably expected to cause the pain the claimant alleges [he] suffers." *Craig v. Chater*, 75 F.3d 585, 595 (4th Cir. 1996). However, the Fourth Circuit has "previously held that ALJs apply an incorrect legal standard by requiring objective evidence of symptoms even when they also consider other evidence in the record." *Arakas*, 983 F.3d at 97 (citing *Hines v. Barnhart*, 453 F.3d 559, 563, 565-66 (4th Cir. 2006)); *see also Lewis v. Berryhill*, 858 F.3d 858, 866, 868 n.3 (4th Cir. 2017). Claimants may not be faulted for pursuing conservative treatments for fibromyalgia because there is no other available treatment for this chronic condition. *See id.* at 102 ("[Plaintiff] cannot be faulted for 'failing to pursue non-conservative treatment options where none exist.'") (quoting *Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)).

On December 15, 2025, the Fourth Circuit reversed and remanded *Hultz v. Bisignano*, reiterating that "fibromyalgia is a serious and mysterious condition, disproportionately affecting women, that our current science is incapable of observing through objective medical testing." *Hultz v. Bisignano*, 162 F.4th 111, 115 (4th Cir. 2025). There, at step three the ALJ determined that the plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. *Id.* at 119. "The ALJ determined that the fibromyalgia did not equal this listing because (1) [the plaintiff] did not have a documented need for a mobility device; (2) she did not have involvement of two or more organs and body systems, with one involved to at least a moderate level of severity, (3) she did not have ankylosing spondylitis or other spondyloarthropathies, (4) and she did not have a marked limitation in activities of daily living, social functioning, or completion of tasks in a timely manner." *Id.* The Court ultimately held that the ALJ failed to apply the correct legal standards by relying heavily on objective medical criteria to assess the plaintiff's fibromyalgia in two aspects of the ALJ's decision. *Id.* at 122.

The ALJ's analysis here runs afoul of *Hultz* and *Arakas*. In finding that Plaintiff's fibromyalgia was not medically equaled at step three, the ALJ contravened *Arakas* by relying on the fact that "objective findings of fibromyalgia, such as tender trigger points on examination, are poorly documented and even specialist/rheumatology records do not document significant dysfunction." (Tr. 22) Despite finding that "[t]he record indicates that complaints of pain and [o]ther symptoms, attributed in part to fibromyalgia, are long-standing, documented well prior to

the alleged onset date and continuing through the most recent medical evidence," the ALJ determined that Plaintiff's fibromyalgia, alone or in combination with her [o]ther severe impairments, does not result in sufficient symptoms or objective functional impairment to medically equal a listed impairment." (Tr. 22-23).[3] The Court recognizes that trigger points ( "tenderness in specific sites on the body") "are the only objective signs of fibromyalgia." *Arakas*, 983 F.3d at 97 (internal quotation marks and citations omitted). However, as discussed *supra*, the Fourth Circuit has made clear that objective medical evidence, or the lack thereof, cannot be used as even one of multiple factors "to discount claimant's subjective complaints regarding symptoms of fibromyalgia . . . ." *Id.* Instead, such findings, if considered at all, "should be treated as evidence *substantiating* the claimant's impairment' rather than discrediting the claimant's complaints." *Charlene L. v. Saul*, 3:19-cv-626, 2021 WL 725822, at *5 (E.D. Va. Feb. 3, 2021) (quoting *Arakas*, 983 F.3d at 97–98). Here, it is clear that the ALJ relied upon objective findings, including the lack of tender trigger points, to undercut or refute Plaintiff's statements at step three. This Court has made clear that an ALJ's step three analysis "contravene[s] Fourth Circuit fibromyalgia precedent [when] it reject[s] equivalence by discrediting Plaintiff's subjective statements based on objective medical evidence." *Myers v. Bisignano*, No. 1:25-CV-01767-JMC, 2026 WL 1810142, at *2 (D. Md. June 24, 2026). Here, the ALJ committed the same error.

The Commissioner claims that to accept Plaintiff's argument would mean "ALJ was compelled to fully credit her claims of disabling pain because of the subjective nature of fibromyalgia" and was "not allowed to consult any objective medical evidence along the way." (ECF No. 14 at 17). The Court is mindful that "a fibromyalgia diagnosis does not create a presumptive entitlement to disability benefits." *Hultz*, 162 F.4th at 126. However, the Court recognizes that the repeated references to objective medical evidence as a means to discredit the Plaintiff's statements about the disabling nature of her conditions has been foreclosed many times. *Hultz*, 162 F.4th at 122; *Arakas*, 983 F.3d at 97. Thus, I remand the case for further proceedings.

## V. Conclusion

In sum, the Court agrees with Plaintiff that the ALJ improperly considered Plaintiff's fibromyalgia. In other words, the ALJ's RFC determination for Plaintiff is not supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to improperly discrediting Plaintiff's fibromyalgia in contravention of *Hultz*, and the decision of the SSA is REMANDED for further proceedings in accordance with this Letter Order and Opinion. In so holding, the Court expresses no opinion as to the validity of the ALJ's ultimate disability determination. The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

---

[3] At step four, the ALJ explained that "[i]mpairments/symptoms alleged, but already determined to be either not medically determinable or medically determinable but not severe have been discussed in detail under Finding 3, including specific discussion of any less than minimal impact On work related functioning caused by non-severe impairments, and accordingly will not be discussed again in this portion of the decision." (Tr. 28). Accordingly, the only references to fibromyalgia at step four reiterate that objective findings such as tender trigger points are poorly documented. *Id.* at 29-30, 33.

Sincerely yours,

___________/s/____________

J. Mark Coulson
United States Magistrate Judge